UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 10-10107 |
| | ) | Chapter 11 |
| TIMOTHY JOHN HEILMAN | ) | |
| aka Tim Heilman | ) | |
| SSN/TIN xxx-xx-2244 | ) | |
| | ) | |
| and | ) | INTERIM DECISION RE:  MOTIONS |
| | ) | TO USE CASH COLLATERAL |
| DARLYS LYNN HEILMAN | ) | |
| SSN/TIN xxx-xx-1783 | ) | |
| | ) | |
| Debtors. | ) | |

The matters before the Court are Debtors' Motions for Authority to Use Cash Collateral.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and accompanying order shall constitute the Court's findings and conclusions under Fed.Rs.Bankr.P. 7052 and 9014(c).   As set forth below, the Court concludes Metropolitan Life Insurance Company's security interest extends to Debtors' post-petition milk and milk proceeds.

I.

Pursuant to the Court's Order re:  Debtors' Final Request to Use Cash Collateral of Metropolitan Life Insurance Company (doc. 55) and the Court's Order re:  Debtors' Motion for Authority to Use Cash Collateral (doc. 89), Debtors have been authorized to use Metropolitan Life Insurance Company's ("Metropolitan") cash collateral on the terms and conditions outlined in the Stipulation Between Debtors and Metropolitan Life Insurance Company for Use of Cash Collateral and Adequate Protection (doc. 47) and the Second Stipulation Between Debtors and Metropolitan Life Insurance Company for

-2-

Use of Cash Collateral (doc. 87).[1]   However, pursuant to paragraph 3 of both stipulations, the parties preserved the issue of whether Metropolitan's security interest extends to Debtors' post-petition milk and milk proceeds.[2]

II.

Pursuant to 11 U.S.C. § 552(a), "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  However,

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the

---

[1] The parties previously agreed to Debtors' use of Metropolitan's cash collateral on an interim basis, and the Court approved the parties' agreement (doc. 30).

[2] In their briefs, the parties discussed two additional issues:  (1) whether Debtors have offered sufficient adequate protection of Metropolitan's security interest in Debtors' post-petition milk proceeds; and (2) whether Metropolitan's security interest in Debtors' post-petition milk proceeds should be restricted or terminated under 11 U.S.C. § 552(b)(1).  However, because the parties elected to submit the issue of whether Metropolitan's security interest extends to Debtors' post-petition milk and milk proceeds on briefs rather than proceed with an evidentiary hearing, the present record does not afford an adequate basis for the Court's consideration of the sufficiency of Debtors' offer of adequate protection.  *See Martin v. United States (In re Martin)*, 761 F.2d 472 (8th Cir. 1985).  Moreover, because Debtors did not request relief under § 552(b)(1), which may only be granted after notice and a hearing, in their motion, any discussion of whether Debtors are entitled to such relief would be premature.   Debtors have, however, filed a Motion to Terminate or Restrict Metropolitan Life's Post-Petition Security Interest in Debtors' Post-Petition Milk Proceeds Pursuant to 11 U.S.C. § 552(b) (doc. 92), which will bring the issue before the Court.

commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

Milk is the "product" of a cow. *In re Veblen West Dairy LLP*, Bankr. No. 10-10071, slip op. at 4 (Bankr. D.S.D. July 9, 2010). Consequently, a pre-petition security interest in cows and their products and proceeds extends to both their post-petition milk and the proceeds of their post-petition milk. *Id.* at 5.

III.

By reference to an "attached Exhibit 'A'" in the first numbered paragraph of the parties' security agreement,[3] Debtors granted Metropolitan a security interest in:

All right, title and interest, in and to milk, cream and other dairy products of debtor whether now owned or hereafter acquired, and any general intangibles, accounts receivable, farm program entitlements, monies or proceeds therefrom, including, without limitation, all monies or proceeds due and payable from Associated Milk Producers, Inc., or any other party, and any and all substitutions, accessions, products, additions or proceeds of any of foregoing in whatever form.

All now owned and hereafter acquired furnishings, fixtures, machinery, equipment, systems, building materials and **personal property of every kind and nature whatsoever located on or about the real estate described**

---

[3] The security agreement is attached as Exhibit E (doc. 72-5) to Metropolitan's brief (doc. 72). A more legible copy is attached as Exhibit B (doc. 140-2) to its supplemental brief (doc. 140).

**on the UCC 1 form to which this exhibit is attached**, including, without limitation:  all dairy systems, equipment, facilities (including, without limitation:  all feed and water delivery systems; milking systems, milk tanks, cooling tanks, wash tanks, vacuum pumps, and air compressors; cleaning systems; milking stalls, air gates, crowding gates, gates and doors; all gas and electric fixtures and systems; all heating and cooling fixtures and systems; all grain storage, milling and drying systems; bins, silos, fans, and scales; fuel tanks and systems; generators; water and fuel pumping and metering systems; air circulation systems; temperature control and monitoring systems; conveyors, elevators, augers and motors; plumbing fixtures and systems; office equipment and furnishings; computers; and drainage tile).

Any and all accounts, contract rights, chattel paper, instruments, general intangibles, warehouse receipts, bills of lading and documents of title arising from any of the above described property and any proceeds thereof (including but not limited t[o] insurance and condemnation proceeds).

(Emphasis added.)  In the same paragraph of the security agreement, Debtors also granted Metropolitan a security interest in the "products of any of the foregoing property" and the "proceeds of any and all of the foregoing property."

The security agreement is certainly not a model of clarity.  Metropolitan's security interest in Debtors' cows could have been much more easily discerned had the drafter(s) checked the line next to "[a]ll farm products . . . including . . . livestock and their young" in the first numbered paragraph.  However, when the referenced attachment is considered, there is no getting around the fact Debtors granted Metropolitan a security interest in "[a]ll . . . personal property of every kind and nature whatsoever located on or about [Debtors' farm]" and the products and proceeds of that personal property.

-5-

While Debtors initially conceded Metropolitan has a security interest in their cows,[4] they now argue it does not.  However, Debtors have not suggested cows are not personal property, and they have not explained how their cows might otherwise be excluded from the personal property subject to the security agreement.  Under the circumstances, and for the purposes of Debtors' motion, the Court can only conclude Debtors granted Metropolitan a security interest in their cows and the products and proceeds of their cows.[5]

Pursuant to § 552(b)(1), Metropolitan's security interest in Debtors' cows and the products and proceeds of their cows therefore extends to any and all products of its collateral – including milk – and proceeds of its collateral – including those from the sale of milk – acquired by the estate on or after the petition date.  The Court will enter an appropriate order.  If the parties are unable to agree on appropriate adequate protection, either party may request the matter be set for an evidentiary hearing.

Dated:  September 29, 2010.

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice and Debtor(s), if Debtor(s) did not receive electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[4] On their schedule D (Creditors Holding Secured Claims) (doc. 42 at p. 10), Debtors included their cows among the property securing Metropolitan's claim.

[5] The Court is not determining the rights of other parties in and to the collateral. *See* Fed.R.Bankr.P. 7001(2).